# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

LISA PROCTOR,
    Plaintiff

vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

Case No. 1:09-cv-127
(Beckwith, J; Hogan, M.J.)

## REPORT AND RECOMMENDATIONS

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for disability insurance benefits (DIB). This matter is before the Court on Plaintiff's Statement of Errors (Doc. 7), the Commissioner's Memorandum in Opposition. (Doc. 10) and Plaintiff's Reply Memorandum. (Doc. 13).

## PROCEDURAL HISTORY

Plaintiff, Lisa Proctor, was born on December 9, 1970 and was 37 years old at the time of the administrative law judge's (ALJ) decision. Plaintiff has a ninth grade, limited education and has past work experience as a telemarketer, deli clerk, and fast food worker.

Plaintiff filed an application for DIB on August 11, 2005, alleging disability since June 25, 2002 (Tr. 80-84), due to a left ankle sprain and RSD (Reflex Sympathetic Dystrophy Syndrome). (Tr. 95, 135). Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2006. (Tr. 22, 86). Plaintiff's application was denied initially and upon reconsideration. (Tr. 38-51). Plaintiff requested and was granted a de novo hearing before an ALJ. (Tr. 52). On June 12, 2008, plaintiff, who was represented by counsel, appeared and testified at a hearing before an Administrative Law Judge. (Tr. 478-500). Two medical experts, Arthur Lorber, M.D. and George Rogers, Ph. D. and a vocational expert, William T Cody, also appeared and testified at the hearing. (Tr. 500-31).

On August 7, 2008, the ALJ issued a decision denying plaintiff's DIB application. The ALJ determined that plaintiff suffers from the severe impairments of mild degenerative disc disease, history of left ankle injury, and obesity, but that such impairments do not alone or in combination meet or equal the level of severity described in the Listing of Impairments. (Tr. 22, 23). According to the ALJ,

> [T]hrough the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can understand, remember, and carry out job instructions not involving complex, detailed tasks. She can relate to others, including coworkers, on a superficial basis. The claimant can perform work not involving high levels of stress.

(Tr. 24). The ALJ also determined that plaintiff is able to perform her past relevant work as a telemarketer, deli clerk, and fast food worker. (Tr. 32). Additionally, if plaintiff was limited to sedentary work with a sit/stand option; simple, routine, repetitive work with only superficial contact with others, no strict production requirements, and without frequent changes or decision making, the vocational expert named jobs that exists in significant numbers in the national economy that plaintiff could perform, including jobs as a bench assembler and hand packer. *Id.* Consequently, the ALJ concluded that plaintiff is not disabled under the Act. *Id.* The Appeals Council denied plaintiff's request for review (Tr. 6-8), making the decision of the ALJ the final administrative decision of the Commissioner.

### PLAINTIFF'S TESTIMONY AT THE HEARING

The ALJ fairly summarized plaintiff's testimony as follows:

> At the hearing, the claimant testified that during the period between her alleged onset date and her date last insured (December 31, 2006), her pain was constant, and it was worsened by cold, extreme hot, touch, wind, and even clothing and shoes. The claimant said that from 6/02 through 2006, her pain would drop to a 3/10 in intensity and would go as high as a 10/10, varying in intensity throughout the day. She said that good periods lasted 2 days to 3-4 months, during which she was still limited but not as limited as usual. The claimant said she had problems running the vacuum cleaner and cleaning and could drive for only short

2

>periods. The claimant further testified that she needed to lie down a lot, and she could not sit, stand, or walk for prolonged periods.
>
>The claimant also testified, however, to activities during the alleged period of disability that are inconsistent with her allegations of total disability. She testified, for example, that she took at least 4 trips Gatlinburg, Tennessee. She said her husband drove, but she did walk around Gatlinburg. The claimant also testified that her daughter had a 12 month baby in 2005, for whom the claimant babysat while her daughter was in high school. She testified that her grandson was very sick, and he just laid on the couch with her. She testified she only had to feed him and change his diapers. She said the baby was not crawling around at that time, and her daughter had to come home from high school to attend to him when he was moving around. This simply is not credible.

(Tr. 28).

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for DIB, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(I), 423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the

3

impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

The Commissioner is required to consider plaintiff's impairments in light of the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing). The Listing sets forth certain impairments which are presumed to be of sufficient severity to prevent the performance of work. 20 C.F.R. § 404.1525(a). If plaintiff suffers from an impairment which meets or equals one set forth in the Listing, the Commissioner renders a finding of disability without consideration of plaintiff's age, education, and work experience. 20 C.F.R. § 404.1520(d); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v. Richardson*, 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by

4

showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999); *Born*, 923 F.2d at 1173; *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). *See also Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984)(per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner*, 587 F.2d at 323. *See also Cole v. Secretary of Health and Human Services*, 820 F.2d 768, 771 (6th Cir. 1987).

Opinions of treating physicians must be accorded controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and not "inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *Walters v. Commissioner of Social Security*, 127 F.3d 525, 530 (6th Cir. 1997); 20 C.F.R. §404.1527(d)(2). If the ALJ finds that either of these criteria have not been met, he is then required to apply the following factors in determining the weight to be given a treating physician's opinion: "The length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. ..." *Blakley v. Commissioner of Social Security*, 581 F.3d 399 (6th Cir. 2009); *Wilson*, 378 F.3d at 544. In this regard, the ALJ is required to look at the record as a whole to determine whether substantial evidence is inconsistent with the treating physician's assessment. *See* 20 C.F.R. §404.1527(d)(2),(4).

Where the Commissioner has erroneously determined that an individual is not disabled at steps one through four of the sequential evaluation, remand is often appropriate so that the sequential evaluation may be continued. *DeGrande v. Secretary of H.H.S.*, 892 F.2d 1043 (6th Cir. Jan. 2, 1990) (unpublished, available on Westlaw). Remand is also appropriate if the

5

Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). Remand ordered after a hearing on the merits and in connection with an entry of judgment does not require a finding that the Commissioner had good cause for failure to present evidence at the prior administrative hearing. *Faucher*, 17 F.3d at 173.

Benefits may be immediately awarded only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher,* 17 F.3d at 176. *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176. *See also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler,* 771 F.2d 966, 973 (6th Cir. 1985).

## OPINION

The pertinent medical findings and opinions have been adequately summarized by the parties in their briefs (Doc. 7 at 2-9; Doc. 10 at 3-5) and will not be repeated here. Where applicable, the Court shall identify the medical evidence relevant to its decision.

Plaintiff assigns three errors in this case. First, plaintiff contends the ALJ erred in finding that plaintiff's RSD was not a severe impairment. According to plaintiff, the ALJ's non-severity finding is not supported by substantial evidence for the following reasons: The ALJ improperly ignored the diagnoses of Drs. Choudhury, Simons, Usmani, Chunduri, Schertzinger and Wachendorf, who diagnosed that plaintiff suffered from RSD and/or neuropathic pain: the ALJ improperly disregarded objective findings indicative of RSD; the ALJ erred by giving the greatest weight to the opinion of Dr. Lorber, the medical advisor, who testified at the hearing; the ALJ ignored plaintiff's treatment for RSD; and the ALJ ignored Ohio BWC's determination that plaintiff had RSD. Second, plaintiff argues that the ALJ's residual functional capacity ("RFC") finding was not supported by substantial evidence. According to plaintiff, had the ALJ properly

6

found RSD to be a severe impairment, she would not have been found to be capable of performing light work. Plaintiff next argues that the ALJ failed to accept the psychological RFC of Dr. Murphy. Further, plaintiff contends the ALJ ignored Ohio BWC's disability decision. Finally, plaintiff requests a remand hearing before the ALJ to assess additional evidence that there was no gap or lapse in treatment.

Plaintiff treated with Dr. Choudhury, an orthopedist, from August 1998 to March 1999, following her work related injury in August 1998. (Tr. 174-84). Examination findings during this period reveal temperature changes, color changes, ecchymosis, hypersensitivity, swelling and loss of sensation in plaintiff's left ankle and foot. (Tr. 174, 178, 180-83). Nerve conduction studies, taken in November 1999, were abnormal with evidence of slowing of the motor nerve conduction velocities for the right and left peroneal and tibial nerves. (Tr. 185-88). Dr. Choudhury diagnosed mild symptoms of RSD and prescribed physical therapy and medication. (Tr. 174).

Plaintiff treated with Dr. Simons, a pain specialist, from August 2002 through January 2007. (Tr. 238-40, 314-27). Initially, Dr. Simons found swelling, temperature changes, atrophy, loss of sensation, weakness in the left lower extremity, loss of Achilles reflex, and positive straight leg raising upon examination. (Tr. 240). Dr. Simons diagnosed RSD, left leg and left ankle sprain/strain. *Id.* Examination in September 2002, revealed allodynia and hyperpathia of the left foot. (Tr. 239). In October 2002, Dr. Simons, reported that nerve conduction studies showed early indication of peripheral neuropathy. (Tr. 231). In 2004, Dr. Simons implanted a spinal cord stimulator and in August 2005, Dr. Simons removed the spinal cord stimulator and replaced it with another stimulator. (Tr. 430-32). In March 2006, Dr. Simons prescribed a cane for prolonged walking. (Tr. 321). The physical therapist found exquisite tenderness with palpation in March 2006. (Tr. 327). In May 2006, Dr. Simons reported that neurologically, he saw sensory change in the lower extremity. (Tr. 319). Straight leg raising was positive and there was hypersensitivity over the leg. *Id.* Dr. Simons prescribed Celebrex, Wellbutrin, Lyrica, Flexeril and Neurontin. (Tr. 315).

Plaintiff treated with Dr. Usmani for pain management from February 2007 through December 2007. (Tr. 387-400). On examination, Dr. Usmani found allodynia to soft touch,

7

"coldness", weakness in the left foot and leg and muscles spasms. (Tr. 388, 394, 395). He diagnosed RSD and arthritis of the left lower extremity and depression. (Tr. 387-400). Dr. Usmani prescribed Neurontin, Zanaflex, Lidoderm pain patches, Celebrex and Wellbutrin. *Id.*

In May 2007, Dr. Chunduri evaluated problems plaintiff was having with the spinal cord stimulator's lead migration and lack of coverage in either leg. (Tr. 427-28). Dr. Chunduri diagnosed chronic neuropathic pain and recommended removal of her spinal cord stimulator, which took place in July 2007. (Tr. 379-85).

Plaintiff treated with pain management specialist, Dr. Schertzinger, from January 2008 to May 2008. (Tr. 433-41). Clinically, Dr. Schertzinger found swelling, tenderness and decreased sensation in the left ankle. (Tr. 434, 435, 437). Nerve conduction studies showed right L5/S1 radiculopathy and left peroneal neuropathy. (Tr. 438). Dr. Schertzinger diagnosed left lower limb RSD. (Tr. 433-41).

In October 2002, Dr. Wachendorf, an examining physician for the Ohio Bureau of Worker's Compensation ("BWC") reported plaintiff had an antalgic gait, warmth in the left ankle, decreased sensation and loss of motion. (Tr. 242-43). Dr. Wachendorf diagnosed sprain of left ankle and RSD left lower limb. She limited Plaintiff to standing no more than 10 minutes, walk no more than 5 minutes and lift and carry items weighing only 5-10 pounds. *Id.* Dr. Wachendorf determined that plaintiff could not return to former position of employment. *Id.* Dr. Wachendorf believed the medical documentation supported temporary total compensation from August 20, 2002 until around December 1, 2002. *Id.*

Plaintiff was also evaluated by Dr. Siegel for her BWC claim in April 2006. (Tr. 466-68). Plaintiff described persistent pain in the left foot and left distal leg that radiated upwards to the left thigh and paresthesia of all five toes of the left foot. *Id.* Dr. Siegel found color changes, alternating cool to warm sensations, weakness, antalgic gait, alopecia, and hyper analgesia in plaintiff's left foot and ankle. *Id.* For her allowed conditions of RSD and left ankle sprain, Dr. Siegel assigned a permanent partial disability of 23% *Id.*

In February 2007, examining physician, Dr. Paley noted a significant antalgic gait favoring the left lower extremity, coldness of the left foot and ankle, aldenia and hyperalgesia with simple light touch of the left ankle, guarded active range of motion of the left ankle, and

8

tenderness in the entire left foot and ankle "which is indicative of her history of RSD". (Tr. 464-65). Dr. Paley diagnosed RSD of the left lower extremity and recommended that plaintiff continue her current treatment regimen. *Id.*

Nevertheless, the ALJ found that plaintiff's severe impairments include mild degenerative disc disease, history of left ankle injury, obesity, depression and a pain disorder. Plaintiff challenges the ALJ's failure to accept plaintiff's diagnosed RSD as a severe impairment.

A severe impairment is one that significantly limits the physical or mental ability to perform basic work activities. *See,* 20 C.F.R. §404.1521. An impairment can be considered as not severe only if the impairment is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience. *Farris v. Secretary of Health and Human Services,* 773 F.2d 85, 90 (6th Cir. 1985)(citation omitted).

RSD is a "series of changes caused by the sympathetic nervous system, marked by pallor or rubor, pain, sweating, edema, or osteoporosis, following muscle sprain, bone fracture, or injury to nerves or blood vessels." Dorland's Illustrated Medical Dictionary 560 (29th ed. 2000). The disease often causes the sufferer to feel intense pain, often as a result of a seemingly minor trauma. *See,* e.g., *Howard v. Secretary of Health and Human Servs.,* 932 F.2d 505, 506 (6th Cir.1991). "[RSD] is a chronic pain syndrome most often resulting from trauma to a single extremity. It can also result from diseases, surgery, or injury affecting other parts of the body. Social Security Ruling ("SSR") 03-2p, 2003 WL 22399117, at *1 (S.S.A. Oct. 20, 2003).

The most common acute clinical manifestations [of RSD] include complaints of intense pain and findings indicative of autonomic dysfunction at the site of the precipitating trauma. Later, spontaneously occurring pain may be associated with abnormalities in the affected region involving the skin, subcutaneous tissue, and bone. It is characteristic of this syndrome that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual. When left untreated, the signs and symptoms of the disorder may worsen over time. SSR 03-2P at 2. A diagnosis of RSD is based upon "complaints of persistent, intense pain that results in impaired mobility of the affected region," coupled with other complaints, including swelling, "[a]utonomic instability--seen as changes in skin color or texture, changes in sweating

9

(decreased or excessive sweating), skin temperature changes, or abnormal pilomotor erection (gooseflesh)," abnormal hair or nail growth--either too slow or too fast, osteoporosis, or involuntary movements of the affected region. *Id.* at 4.

In concluding that plaintiff's diagnosed RSD is not a severe impairment, the ALJ relied on Dr. Lorber, the medical expert, who rejected the diagnosis of RSD because some examiners allegedly found abnormalities, while others have not. (Tr. 510, 515). Dr. Lorber believed that given plaintiff's psychiatric condition, her left leg complaints were a psychogenic type condition. *Id.*

Dr. Lorber testified that Plaintiff did not meet or equal any orthopedic or neurologic Listing and could function easily on a light level of activity with no other restrictions. (Tr. 510-511). Upon questioning by Plaintiff's attorney, Dr. Lorber acknowledged that he was not familiar with SSR 03-2p, but testified that he had doubts about the validity of Dr. Simon's evaluations. Dr. Lorber noted that some of the findings reported by Dr. Simons were not found by other physicians. (Tr. 512-13).

Dr. Lorber further testified that, in his experience, RSD does not come and go, "(t)o claim that any and all of, that only one or two of the routine findings of reflex sympathetic dystrophy could qualify someone for, especially subjective appreciation of temperature or color, just blows my mind and I would reject that concept entirely." (Tr. 514).

Plaintiff has been treated for RSD and its associated pain by Dr. Choudhury, an orthopedist, and Dr. Simons, Dr. Usmani and Dr. Schertzinger, all pain specialists. *See* Tr. 174-88, 238-40, 314-27, 387-400, 433-41. Dr. Chunduri, a consulting orthopedic surgeon, and Dr. Wachendorf, Dr. Siegel and Dr. Paley, the consulting physicians who evaluated plaintiff at the request of the BWC, also diagnosed RSD or chronic neuropathic pain. *See* Tr. 242-43, 379-85, 427-28, 464-65, 466-68. Almost every physician who has examined plaintiff for her complaints of pain has agreed that she suffers from RSD. Dr. Lorber, the medical expert who has never examined or treated plaintiff, testified that plaintiff has no work-related limitations as a result of RSD.

This Court concludes that the ALJ erred in relying on the testimony of the medical expert in finding that plaintiff's RSD is not a severe impairment. Not only did the ALJ improperly

10

reject the diagnosis of all treating and examining physicians, but Dr. Lorber's testimony, upon which the ALJ relied, reflects an element of hostility to the plaintiff, in suggesting that plaintiff "certainly has every reason with regard to her Workers' Compensation cases to magnify or create symptomatology." (Tr. 514). Dr. Lorber's testimony was in direct conflict with SSR 03-2p, which states: "It may be noted in the treatment records that these signs are not present continuously, or the signs may be present at one examination and not appear at another. Transient findings are characteristic of [RSD], and do not affect a finding that a medically determinable impairment is present." SSR 03-02p * 4. For example, Dr. Lorber testified that clinical signs of RSD such as hair loss do not "come and go, you don't find findings one day and not find them on the other." *See* Tr. 514.

Dr. Lorber further testified that none of the other physicians besides Dr. Simons made findings consistent with RSD. (Tr. 513). However, as noted above, all of the examining physicians made findings consistent with RSD. Dr. Lorber actually conceded that the findings necessary to diagnose RSD were present in the record. (Tr. 512). Thus, the ALJ's reliance on Dr. Lorber's opinion was in error.

Plaintiff also argues that the ALJ ignored the findings of the Ohio BWC. An ALJ must consider the decision of the Ohio BWC, which found that plaintiff suffered from RSD. As a preliminary matter, the decision of another governmental agency is not binding on the Commissioner. 20 C.F.R. §404.1504. The social security regulations explain that:

> A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

*Id.* However, although the findings of the Ohio BWC are not binding on the Social Security Administration, at minimum, the ALJ must consider it. *See generally McCartney v. Massanari*, 298 F.3d 1072 (9th Cir. 2002). There isn't a uniform consensus among the circuits as to how much weight the decision of another governmental agency should receive, but at minimum they require the ALJ to consider the other agency's decision. *Id.*; Carolyn A. Kubitschek, *Social*

11

*Security Disability, Law and Procedure in Federal Court* §2:43 (1994, Supp. 2007). The Sixth Circuit, by implication, requires the ALJ to consider the decision of the Veteran Administration and to articulate reasons for the amount of weight it assigns to the decision. *See Harris v. Heckler*, 756 F.2d 431, 434 (6th Cir. 1985); *Stewart v. Heckler*, 730 F.2d 1065, 1068 (6th Cir. 1984). The broader academic and practitioner consensus agrees with this position. *See, e.g.*, Harvey L. McCormick, *Social Security Claims and Procedures* §8:49 (5th ed. 1998, Supp. 2007). Furthermore, the Social Security Administration has ruled that an adjudicator should explain the consideration given to decisions on disability made by governmental and nongovernmental agencies. SSR 06-03p.

The ALJ erred in failing to consider the Ohio BWC's finding that plaintiff suffered from RSD. The ALJ was not bound by the decision of the Ohio BWC. *See* 20 C.F.R. §404.1504. However, she should have at least considered the finding and articulated the reasons for rejecting it. *See McCartney*, 298 F.3d at 1075-1076; SSR 06-03p. There is no indication in the August 7, 2008, decision that the ALJ considered the Ohio BWC's decision. (Tr. 20-32).

The Court recognizes that the Commissioner does not necessarily commit reversible error in finding that an impairment is not severe, but only if the ALJ finds at least one severe impairment and then goes on to evaluate the claimant's residual functional capacity in light of all impairments, both severe and non-severe. *Maziarz v. Secretary of Health and Human Services*, 837 F.2d 240, 244 (6th Cir. 1987). However, based on the above analysis, this Court finds that the ALJ errered at Step 2 of the sequential evaluation when she failed to find plaintiff's RSD was not a severe impairment.

The Court's disposition of this issue renders it unnecessary to decide if the ALJ also failed to accept the psychological RFC of Dr. Murphy and to assess additional evidence that there was no gap or lapse in treatment.

**IT IS THEREFORE RECOMMENDED THAT**: this case be **REVERSED** and **REMANDED** to the Commissioner pursuant to Sentence Four of 42 U.S.C. § 405(g), for further proceedings consistent with this opinion.

Date: 9/17/10

Timothy S. Hogan
United States Magistrate Judge

13

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), within fourteen (14) days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).